WILLIAM BENNETT

*v.*

JAMES M. WALKER *et al.*

*Filed at Ottawa November 10, 1881.*

1. SETTLEMENT—*conclusive, unless impeached for fraud, etc.* A settlement made by attorneys with a client after his majority, in respect to moneys and securities received by the former on a compromise of litigation affecting the interest of the latter, while a minor, and for attorney's fees and advances made in his behalf, will not be disturbed unless it is impeached for fraud, unfairness, or mistake.

2. EVIDENCE—*weight of evidence.* The sworn answer of two defendants, and their testimony, as to a settlement with a complainant, and its fairness, is not overcome by the testimony of the complainant alone, impeaching its fairness.

APPEAL from the Appellate Court for the First District;— heard in that court on writ of error to the Circuit Court of Cook county.

Mr. JAMES FELCH, for the appellant.

Mr. JOHN J. HERRICK, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in equity, brought by the appellant, William Bennett, in the circuit court of Cook county, against George Sedgwick and James M. Walker, seeking an account of moneys and securities received by the latter as attorneys of the complainant, arising from a compromise of complainant's interest in a tract of land in the city of Chicago, then in litigation. The case was heard on the pleadings and proofs, and the circuit court dismissed the bill. The decree was affirmed by the Appellate Court for the First District, and Bennett appealed to this court. Subsequent to the decree in the circuit court, both defendants died, and the appeal is prosecuted against the executrix of the survivor.

It appears that in February, 1855, Henry Walker and others brought a bill in equity in the circuit court of Cook county, against Bennett, setting up that the father of Bennett, in 1834, purchased of the United States a certain described tract of land of 80 acres, in Cook county; that he subsequently conveyed the same to one Kinzie, under whom Walker and others claimed the land; that the deed to Kinzie was never recorded, and had been lost; that the father had died, leaving Bennett his sole heir,—and the bill asking that Bennett be decreed to execute a deed of the land to Walker and others. At the time of the filing of the bill the land was within the limits of the city of Chicago, and valued at from $500,000 to $800,000. Bennett was a minor, not quite eighteen years of age, and without means, and Sedgwick and Walker, being practicing attorneys in Chicago, were employed to, and did as such attorneys, take charge of the defence of the interest of Bennett in the land, making all needed disbursements. On the hearing of that case it was decided in favor of the complainants, and to the effect that the defendant, Bennett, had no right in the property. The case was taken to the Supreme Court, where the decision was affirmed.

Pending the cause in the Supreme Court, and on the 9th day of April, 1859, a compromise was effected, so far as 60 acres of the land involved in the suit were concerned, in virtue of which there were received by Sedgwick and Walker seven lots in the city of Chicago, valued at $3500, $8200 in money, and $11,500 in notes, secured by mortgage. Soon thereafter, and as of the 23d day of April, 1859, a settlement was had between Bennett and Sedgwick, whereby the seven lots, valued at $3500, and $100 in money, were received by Bennett, and the residue of what was received on the compromise was retained by Sedgwick and Walker.

It is with respect to the money and securities received on this compromise that the bill in this case, filed March 3, 1873, seeks an account, it alleging, as against the settlement

above named, and in excuse of the delay in filing the bill, that Bennett accepted the seven lots as his share arising out of the compromise, relying upon the statement of Sedgwick and Walker that they only received money enough to reimburse them for what they had paid out, without informing Bennett how much was received in cash and notes, and that the first information he (Bennett) had of the amount of money and notes so received, was in November, 1869.

The bill alleges that the employment of Sedgwick and Walker was under an agreement that the two latter were to advance all money for necessary costs and expenses of every kind, and were to receive for such money to be advanced and the services to be rendered by them only one-eighth part of whatever should be recovered or realized of the land. Bennett and his mother both testify that such an agreement in writing was entered into with Sedgwick and Walker in 1855, the agreement being left with the latter. Sedgwick and Walker deny the making of any such agreement, and produce a written agreement—which they testify to be the only one ever made in the matter—entered into between them and Hugh Maher, the guardian of Bennett, dated April 16, 1856, whereby Sedgwick and Walker were to make all advances for costs, etc., and in case of failure in the suit to receive nothing for money paid out, or services, but in case of any recovery, by suit or compromise, they to be repaid all money paid out, also nine times the amount so paid out for the risk in making such advances, and they to retain reasonable attorney's fees and all sums paid to other counsel, for services, employed by them in the management of the business, after such payments the remainder to be equally divided between Bennett and Sedgwick and Walker.

On the margin of this agreement there appears indorsed a ratification of the same, signed by Bennett, of the date of August 28, 1858. Bennett came of age July 17, 1858. This ratification, if understandingly made, would be strong evidence

against the alleged agreement of 1855, and that the agreement of April 16, 1856, with Maher, guardian, was all the agreement there was upon the subject. But without remarking further in respect to these agreements, we think the disposition of the case should rest upon the settlement which was had between the parties in 1859, and which seems to have been made without reference to the written agreement of April 16, 1856. Bennett, in his testimony, speaks of this as, and calls it, a settlement, but seeks to impugn it on the ground that the attorneys did not disclose to him what, besides the lots, they received upon the compromise they made, further than that they received just barely enough money to reimburse them what they had paid out; that he never knew anything about their having received $8200 in money, and $11,200 in notes, secured by mortgage. He testifies fully to this, but there is his testimony alone in this respect.

The answers of the defendants are required to be under oath, and by their sworn answers they state that it was explicitly agreed between them and complainant that the latter should have the seven lots in addition to the money paid out to and for him; that defendants were to retain the amount of money paid out by them, with interest at ten per cent, till April 23, 1859; also, the amount defendants had agreed to pay, and did pay, amounting to $8453.89, and the notes and mortgages which had been received. They annex a detailed statement of their advances, amounting, with such interest, to $8447.77. They testify, in addition, that at the settlement it was mentioned and talked over what was the amount of notes and mortgages received on the compromise, and the amount in money which was received, and that it would all be required to repay their advances; and, further, that the makers of the notes were insolvent, and on foreclosure of the mortgages securing the notes they realized but $5764.96, they themselves bidding in the mortgaged premises at the foreclosure sale for that sum.

This settlement, made between the parties at a time when complainant was of full age and competent to act, should stand, unless it be impeached for fraud, or mistake, or unfairness. The unsupported · testimony of complainant is not sufficient for that purpose against the answers under oath and the testimony of the defendants to the contrary. Appellant's counsel admit this as the general rule, but say that it should not apply in this case, on account of the relation which subsisted between the parties,—that of attorney and client; that because of that relation the burden of proof was upon the defendants to show affirmatively that the settlement was just· and fair. Even if the general rule, that where a dealing has been had between attorney and client, and the propriety of the transaction is called in question, the *onus* is upon the attorney to show its fairness, does apply in the case of such a settlement as the one here, we think this rule of proof is met in the present case.

As observed, there is but a single witness, the complainant, impeaching the settlement; there is the answer, under oath, of the defendants sustaining it. As evidence, an answer under oath, when it is required, is more than the equivalent of the testimony of one witness, so that the answer here makes a preponderance of evidence in favor of the fairness of the settlement.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*